## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIM. NO. 1:17-CR-342** |
| | : | |
| **v.** | : | **(Judge Rambo)** |
| | : | |
| | : | **(Magistrate Judge Carlson)** |
| **ARTHUR LOVE** | : | |

## MEMORANDUM AND ORDER

### I.   Introduction

In requesting release pending sentencing, Arthur Love must overcome a series of statutory hurdles. First, by virtue of the serious drug trafficking charges lodged against him, Love was presumed at the time of his indictment to present a danger to the community. 18 U.S.C. § 3142(e). This presumption was further bolstered by Love's prior criminal history, which was marked by several previous drug convictions. Convicted of drug trafficking on his own guilty plea, Love awaits sentencing and is now subject to a second, higher set of legal hurdles which he must satisfy in order to secure release pending sentencing. 18 U.S.C. § 3143(a)(2). Finally, to the extent that he now wishes to cite some compelling circumstances, namely the COVID-19 pandemic, as the justification for his release, Love faces yet another set of legal hurdles, all of which must be met before we can consider his release.

This case comes before us for consideration of a motion for presentence release of the defendant filed pursuant to 18 U.S.C. § 3142(i), which provides that:

> The judicial officer may, . . ., permit the temporary release of the person, in the custody of a United States marshal or another appropriate person, to the extent that the judicial officer determines such release to be necessary for preparation of the person's defense or for another compelling reason.

18 U.S.C. § 3142 (i). In this case, the defendant is subject to mandatory presentence detention pursuant to 18 U.S.C. § 3143(a)(2). Nevertheless, he seeks presentence release pursuant to 18 U.S.C. § 3145(c) which provides that: "A person subject to detention . . . , and who meets the conditions of release . . . , may be ordered released, under appropriate conditions, by the judicial officer, if it is clearly shown that there are exceptional reasons why such person's detention would not be appropriate."

In the instant case, the "exceptional reason" which the defendant asserts justifies the defendant's temporary release from presentence detention is the COVID-19 pandemic that is sweeping the nation, and the dangers of infection which may result from close confinement in a custodial setting. This motion is fully briefed by the parties, and is therefore ripe for resolution.

We acknowledge the gravity of the defendant's concerns, which are shared by all Americans as this nation faces a pandemic without precedent in the past century of our nation's history. In addressing the instant motion, we must assess these individual medical concerns, apply the legal benchmarks mandated by Congress, and weigh these concerns against the important societal interests promoted by the Bail Reform Act, which calls for the detention of those defendants who present a

danger to the community. We also undertake this analysis mindful of the exacting

legal standards set by statute in this case, which involves a request for bail by a

criminal recidivist drug trafficker who is awaiting sentencing. Having conducted an

individualized assessment of the facts and circumstances presented in this case, for

the reasons set forth below it is ordered that the motion for temporary release is

DENIED.

## II.    <u>Factual Background and Procedural History</u>

On November 1, 2017, the defendant was charged with seven counts of

distribution of controlled substances in violation of 21 U.S.C. § 841(a)(1),

conspiracy to distribute controlled substances in violation of 21 U.S.C. § 846, and

possession of a firearm in furtherance of drug trafficking in violation of 18 U.S.C. §

924(c)(1)(A). Following the defendant's arrest, the United States moved pursuant to

18 U.S.C. § 3142 to detain the defendant pending trial. Initial proceedings and a

detention hearing were then conducted in this case on November 2, 2017.

At the time of these initial proceedings, the probation office prepared a

comprehensive pre-trial services report, which provided the following information

concerning the defendant's social and medical history, prior history of substance

abuse, and criminal record: the defendant is thirty-three years old and was born in

New York, and has resided in Red Lion, Pennsylvania since 2017. He resides with

his wife of almost three years, her daughter, and his child. The defendant reported

that he had worked at a barber shop in York but had been unemployed since 2016 after he was shot in his right thigh. He reported that he was in good physical health, despite a metal rod in his right thigh, and he reported no mental health issues. He also reported using illicit substances beginning at the age of 18 and receiving substance abuse treatment while serving a sentence in the Pennsylvania Department of Corrections. His lengthy criminal history began at the age of fourteen and included convictions of possession and distribution of controlled substances, driving under the influence, as well as pending charges in York, Pennsylvania in January and July of 2017 for manufacturing with intent to deliver controlled substances.

Based on these facts, the pre-trial services report also recommended the defendant's detention based upon a careful evaluation of the following individual characteristics of the defendant: the nature of his instant charges, his prior arrests and convictions, his history of violent behavior and substances abuse, and the fact that the alleged offenses were committed while he was awaiting trial on his pending state charges.

Following a hearing, we ordered the defendant detained pursuant to 18 U.S.C. § 3142, finding that the defendant presented a risk of flight and danger to the community, and that there was no condition or combinations of conditions which could assure the safety of the community or the defendant's appearance in court as required. We entered this order without prejudice to a later bail application, as the

defendant had not presented evidence to overcome the rebuttable presumption of detention at that time. (Doc. 26). The district court denied Love's motion for reconsideration of our initial detention order on June 7, 2018, finding that the defendant posed a danger to the community and a risk of flight, and finding that defendant's proposed third-party custodian, his wife, was inadequate to overcome the presumption of detention. (Doc. 131). Specifically, the district court found that while the defendant's wife claimed she was unaware of the defendant's drug trafficking activity, a search of the home they shared with their two six-year-old children revealed a scale, drug packaging materials, a money counter, and two handguns, which the defendant's wife testified she purchased legally. (Id.)

On August 5, 2019, a plea agreement was filed in which the defendant agreed, among other terms and conditions, to plead guilty to Count I of the indictment, charging him with conspiracy to distribute and possess with intent to distribute 500 grams and more of cocaine hydrochloride, 280 grams and more of cocaine base, and 100 grams and more of heroin. (Doc. 227). In addition, the government agreed to dismiss the remaining counts following sentencing. The defendant entered a guilty plea on September 17, 2019, which was accepted by the district court on the same day via order that deferred sentencing until after the entry of a presentence investigation report for the defendant. A final version of this report was completed

on January 14, 2020, indicating that the total minimum sentence for this offense is 10 years. A sentencing hearing has not yet been scheduled in this case.

The instant motion for temporary release does not focus upon or directly challenge any of these initial detention findings or determinations. Instead, the defendant's motion for release rests upon a concern shared by all: the risk of infection due to the current coronavirus pandemic. As the defendant notes, this risk of community spread is heightened in a custodial setting, where the very nature of confinement limits the ability of individuals to engage in the type of social isolation that is recommended to curb the spread of this disease.

In addition to this generalized concern, the defendant cites the following specific and individualized factors which heighten these medical concerns in the instant case: his asthma, for which he is apparently receiving regular breathing treatments while incarcerated at Adams County Prison.

The Government, in turn, opposes this motion, arguing that the defendant's detention pending sentencing is mandatory under 18 U.S.C. § 3143(a). In addition, the Government posits that the defendant's reasons supporting the motion "neither undermine the Court's prior conclusion that no combination of conditions would ensure the safety of the community nor provide any compelling reason to justify his temporary release pending sentencing." (Doc. 297). Quite simply, the Government asserts that the defendant has not met the high burden to justify his release.

For the reasons set forth below, we agree and will deny this motion.

## III.   **Discussion**

The defendant has entered a guilty plea in this case and is awaiting sentencing. Therefore, the defendant's detention is mandatory pending his sentencing unless the court either "determines that there is a substantial likelihood that a motion for acquittal or new trial will be granted or the Government recommends that no sentence of imprisonment be imposed, and the court finds that the Defendant is not likely to flee or pose a danger to any other person or the community." United States v. Ortiz, 2020 U.S. Dist. LEXIS 67651, *9 (M.D. Pa. Apr. 17, 2020) (citing 18 U.S.C. § 3143(a)(2)). In this case, the defendant has entered a guilty plea and the Government is recommending a sentence of imprisonment. Thus, the exceptions provided in 18 U.S.C. § 3143(a)(2) do not relieve the court of the mandatory obligation to detain the defendant pending his sentencing.

In spite of this mandatory detention, the defendant has nevertheless filed the present motion for presentence release under 18 U.S.C. § 3145(c) in response to the COVID-19 pandemic, alleging that this event presents an "exceptional reason" to compel his release. As courts within this district have explained:

> In order to address Defendant's request for temporary release pending sentencing, the court must first determine whether Defendant meets the criteria for release set forth in 18 U.S.C. §§ 3143(a)(1) or (b)(2). See 18 U.S.C. § 3145(c). Under the pertinent subsections of Section 3143, release may be authorized if the court finds by clear and convincing evidence that the Defendant is not likely to flee or pose a danger to the

safety of any other person or the community if released. If the court makes these findings, then the court may order the Defendant's release, under appropriate conditions, if "it is clearly shown that there are exceptional reasons why such person's detention would not be appropriate." 18 U.S.C. § 3145(c).

United States v. Ortiz, 2020 U.S. Dist. LEXIS 67651, *10 (M.D. Pa. Apr. 17, 2020).

Thus, in order for us to grant the defendant's motion for temporary presentence release, we must find by clear and convincing evidence that he does not present a flight risk or danger to the community. This is an exacting burden of proof for Love, a previously convicted drug trafficker who awaits sentencing for drug trafficking. In effect, Love invites us to find that the court erred when it previously ordered his detention. Given this high burden at this procedural stage, for the reasons set forth below, we are unable to make this determination, and the defendant's motion will accordingly be denied.

### A. **Temporary Release Under 18 U.S.C. § 3142**

While cast as a motion seeking temporary release under 18 U.S.C. §§ 3142 (i) and 3145, this motion is best understood and evaluated in the context of the Bail Reform Act as a whole. In the Bail Reform Act, 18 U.S.C. § 3141, *et seq*., Congress created a comprehensive set of statutory guidelines governing release and detention decisions for criminal cases in federal court. As one court has recently observed:

> Before this Court can turn to the analysis under 18 U.S.C. § 3142(i), it is essential to look at the overarching structure of the statute. The fundamental precept of the Bail Reform Act mandates the release of individuals so long as the court can be reasonably assured the defendant

does not pose a flight risk or danger to the community. 18 U.S.C. § 3142. To the extent that conditions, or a combination of conditions, can be fashioned to reasonably provide such assurances, the individual must be released, as detention is "the carefully limited exception." Id.; see also United States v. Salerno, 481 U.S. 739, 755 (1987).

In assessing what conditions, if any, can be fashioned, judges are directed to take into account available information pertaining to the factors identified under 18 U.S.C. § 3142(g). Those factors include the nature and circumstances of the offense charged, including whether it involves controlled substances or firearms; the weight of the evidence against the defendant; the defendant's history and characteristics (including history relating to drug abuse, defendant's criminal history, and record of appearing at court proceedings); whether the detainee was on probation, parole, or other court supervision at the time of the allegedly offensive conduct; and the nature and seriousness of the danger to any person or the community posed by the defendant's release. 18 U.S.C. § 3142(g). Ultimately, the information provided in each case aids in the individualized assessment that will result in the release or the detention of the person.

United States of America v. Cox, 2020 WL 1491180, *2 (D. Nev. Mar. 27, 2020).

Beyond this individualized assessment mandated by law, the Bail Reform Act also enjoins us to weigh release and detention decisions against a series of statutory presumptions. Principal among these presumptions which guide us in this custodial calculus are a series of statutory presumptions in favor of detention for defendants charged with violent crimes, serious drug trafficking offenses, or crimes involving the sexual exploitation of the most vulnerable in society, our children. As to these defendants, "[s]ubject to rebuttal by the person, it shall be presumed that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community if the judicial officer finds that

there is probable cause to believe that the person committed," one of these enumerated offenses. 18 U.S.C. § 3142 (e)(3). In this regard, it is also well-settled that an "indictment [charging an enumerated offense] is sufficient to support a finding of probable cause triggering the rebuttable presumption of dangerousness under § 3142(e)." United States v. Suppa, 799 F.2d 115, 119 (3d Cir. 1986).

Further, given Love's guilty plea, the defendant's detention is mandatory pending his sentencing unless the court either "determines that there is a substantial likelihood that a motion for acquittal or new trial will be granted or the Government recommends that no sentence of imprisonment be imposed, and the court finds that the Defendant is not likely to flee or pose a danger to any other person or the community." United States v. Ortiz, 2020 U.S. Dist. LEXIS 67651, *9 (M.D. Pa. Apr. 17, 2020) (citing 18 U.S.C. § 3143(a)(2)).

Cast against this comprehensive statutory scheme prescribing the procedure for making initial bail and detention decisions, § 3142(i) constitutes a limited safety valve provision, enabling courts to re-examine detention decisions "to the extent that the judicial officer determines such release to be necessary for preparation of the person's defense or for another compelling reason." 18 U.S.C. § 3142 (i). Until recently, there was a relative paucity of case law construing for us what would constitute a "compelling reason" justifying the temporary release of a previously detained defendant. Of late, however, a rising tide of case law has construed the

meaning and reach of § 3142(i) in the context of continuing custody decisions in the age of coronavirus.

From these cases a few guiding principles have emerged. First, the very nature of the standards prescribed by statute—which require a showing of some "compelling" or "exceptional reason" to warrant temporary release from custody—suggest that such motions must meet exacting standards and "the few courts that have ordered temporary release on the basis of such a condition have done so only 'sparingly' and typically in order 'to permit a defendant's release where, for example, he is suffering from a terminal illness or serious injuries[,]' " United States of America v. Lee, No. 19-CR-298 (KBJ), 2020 WL 1541049, at *3 (D.D.C. Mar. 30, 2020) (quoting United States v. Hamilton, No. 19-CR-54-01, 2020 WL 1323036, at *2 (E.D.N.Y. Mar. 20, 2020)).

Second, like the initial decision to detain, a determination of whether a movant has shown compelling or exceptional reasons justifying temporary release is an individualized judgment which takes into account the unique circumstances of each case and each defendant. Thus, courts have allowed for temporary release where a defendant's specific circumstances presented a compelling and immediate need for release. For example, release of a defendant is permitted under § 3142(i) when that defendant is suffering from a terminal illness or serious injuries. See, e.g., United States v. Scarpa, 815 F. Supp. 88 (E.D.N.Y. 1993) (permitting release of defendant

suffering from terminal AIDS that could no longer be managed by correctional authorities); see also United States v. Cordero Caraballo, 185 F. Supp. 2d 143 (D.P.R. 2002) (permitting release where defendant sustained "serious" and "grotesque" gunshot wounds, suffered a heart attack, underwent an emergency tracheotomy, was partially paralyzed, could not use his hands, and had open and infected wounds about his body, and where the United States Marshal's Service reused to take custody of him until his wounds closed).

There is a necessary corollary to this principle, calling for an individualized and specific showing of a compelling reason to satisfy the movant's burden of proof under § 3142(i). Cases construing § 3142(i) generally "have rejected emergency motions for release of otherwise healthy and potentially violent defendants based solely on the generalized risks that COVID-19 admittedly creates for all members of our society." United States v. Lee, No. 19-CR-298 (KBJ), 2020 WL 1541049, at *6 (D.D.C. Mar. 30, 2020) (citing United States v. Cox, No. 19-cr-271, 2020 WL 1491180 (D. Nev. Mar. 27, 2020)); United States v. Green, No. 19-cr-304, 2020 WL 1477679 (M.D. Fla. Mar. 26, 2020); United States v. Steward, No. 20-cr-52, 2020 WL 1468005 (S.D.N.Y. Mar. 26, 2020); United States v. Hamilton, No. 19-cr-54, 2020 WL 1323036 (E.D.N.Y. Mar. 20, 2020); see also United States v. Clark, No. 19-40068-01-HLT, 2020 WL 1446895, at *3 (D. Kan. Mar. 25, 2020). Rather, at a minimum courts have typically required proof of a "[d]efendant's particular

vulnerability to the disease [in order to] constitute a compelling reason for release under § 3142(i)." United States of Am. v. Keith Kennedy, No. 18-20315, 2020 WL 1493481, at *4 (E.D. Mich. Mar. 27, 2020), reconsideration denied sub nom. United States v. Kennedy, No. 18-20315, 2020 WL 1547878 (E.D. Mich. Apr. 1, 2020).

The United States Court of Appeals for the Third Circuit has very recently underscored for us the necessity of a more particularized showing of a compelling need for release beyond proof of the generalized risks posed by COVID-19 when a prisoner seeks release from jail. Addressing this question in another custodial setting, petitions for compassionate release from custody, the court of appeals stated in terms that are equally applicable here that:

> We do not mean to minimize the risks that COVID-19 poses in the . . . prison system, particularly for inmates . . . . But the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify . . . release.

United States of America v. Raia, No. 20-1033, 2020 WL 1647922, at *2 (3d Cir. Apr. 2, 2020).

Finally, any determination of whether a movant has established compelling reasons which now warrant temporary release from custody must take into account the important considerations of public safety and flight which animated the original decision to detain the offender. Thus, "in considering the propriety of temporary release, the court would need to balance the reasons advanced for such release against the risks that were previously identified and resulted in an order of

detention." <u>United States of America v. Cox</u>, 2020 WL 1491180, *2 (D. Nev. Mar. 27, 2020). In practice, therefore, a decision on a motion seeking release under § 3142(i) entails an informed judgment assessing both individual health concerns and broader public safety interests. In reaching these judgments the court must:

> [E]valuate at least the following factors: (1) the original grounds for the defendant's pretrial detention, (2) the specificity of the defendant's stated COVID-19 concerns, (3) the extent to which the proposed release plan is tailored to mitigate or exacerbate other COVID-19 risks to the defendant, and (4) the likelihood that the defendant's proposed release would increase COVID-19 risks to others. The court will not necessarily weigh these factors equally, but will consider them as a whole to help guide the court's determination as to whether a "compelling reason" exists such that temporary release is "necessary." § 3142(i)

<u>United States v. Clark</u>, No. 19-40068-01-HLT, 2020 WL 1446895, at *3 (D. Kan. Mar. 25, 2020). In addition, those defendants seeking presentence release must demonstrate by clear and convincing evidence that they do not present a risk of flight or a danger to the community.

It is against this statutory backdrop that we evaluate the instant request for temporary release from custody.

## B. **The Defendant's Motion for Temporary Release Will Be Denied.**

At the outset, Love contends that he meets the exacting standard for presentence release, arguing that there is a substantial likelihood that a motion for acquittal or a new trial will be granted in his case. On this score, Love directs us to the Direct Appeal Waiver in his plea agreement, which states that the waiver is

enforceable so long as the sentence imposed is within the applicable guideline range and that the calculation of the guideline range is consistent with the stipulation of the parties. (Doc. 227, at 21-22). Love argues that the final presentence report includes a two-level enhancement for possession of a dangerous weapon, which brings his offense level to 34, whereas the parties stipulated to an offense level of 32. (Doc. 227, at 10; Doc. 264, at 10). Accordingly, Love asserts that the appeal waiver is preliminarily unenforceable.

This argument by Love fails for two reasons. First, and most significantly, we note that Love has not yet been sentenced by the district court. Accordingly, should the district judge impose a sentence within the stipulated range, there will be no arguable breach of the agreement and no right to vitiate the appeal waiver. See United States v. Lockett, 406 F.3d 207, 213 (3d Cir. 2005) ("The waiver of an appeal will not be invalidated merely because unanticipated events occur in the future"). In any event, the remedy for an alleged breach of the agreement would be specific performance, and therefore in no event would this sentencing dispute, which is not yet ripe, result in an acquittal. See United States v. Moscahlaidis, 868 F.2d 1357, 1361 (3d Cir. 1989) ("When the government fails to adhere to the plea agreement, the sentence must be vacated and the case remanded to the district court to either allow the appellant to withdraw his plea or grant specific performance of the plea agreement"); United States v. Erwin, 765 F.3d 219, 231 (3d Cir. 2014) (holding that

specific performance of the plea agreement meant a *de novo* sentencing, as "[s]pecific performance is feasible and is a lesser burden on the government and defendant"). Moreover, Love has not provided any evidence to rebut our previous findings that he poses a danger to the community and a risk of flight. Accordingly, Love cannot meet the exacting standard for his release pending sentencing under § 3143.

Further, we find that Love's concerns regarding the instant COVID-19 pandemic do not meet the stringent standard necessary for his temporary release. Our analysis begins with the proposition that "[w]hile the COVID-19 pandemic has given rise to exceptional and exigent circumstances that require the prompt attention of the courts, it is imperative that they continue to carefully and impartially apply the proper legal standards that govern each individual's particular request for relief." United States v. Roeder, No. 20-1682, 2020 WL 1545872, at *3 (3d Cir. Apr. 1, 2020). In this case, our careful and impartial application of the legal standards mandated by § 3142(i), requires us to assess both the public safety grounds for the defendant's initial detention as well as: (1) the specificity of the defendant's stated COVID-19 concerns; (2) the extent to which the proposed release plan is tailored to mitigate or exacerbate other COVID-19 risks to the defendant; and (3) the likelihood that the defendant's proposed release would increase COVID-19 risks to others.

Turning first to an individualized evaluation of the defendant's COVID-19 concerns, our assessment begins with a recognition of the unprecedented health care crisis presented by the coronavirus pandemic. However, it is clear that under § 3142(i), we cannot grant release of a defendant previously deemed to be a danger to public safety or a risk of flight "based solely on the generalized risks that COVID-19 admittedly creates for all members of our society." United States v. Lee, No. 19-CR-298 (KBJ), 2020 WL 1541049, at *6 (D.D.C. Mar. 30, 2020). In this case, beyond a genuine, but generalized, concern regarding the risks created by COVID-19, the defendant alleges that he suffers from asthma a condition which the CDC has warned can increase an individual's exposure to the virus. However, we have found numerous cases from courts who have had the opportunity to consider whether asthma justifies pre-trial release, and the vast majority of courts have determined that it does not. See, e.g., United States v. Christian, 2020 U.S. Dist. LEXIS 60103 (D. Md. Apr. 6, 2020) (denying temporary release on grounds of underlying asthma diagnosis); United States v. Tucker, 2020 U.S. Dist. LEXIS 59516 (D. Md. Apr. 3, 2020) (collecting cases) (severe asthma, high blood pressure and high cholesterol insufficient to justify temporary release); United States v. Pritchett, CR 19-280, 2020 WL 1640280, *3 (W.D. Pa. Apr. 2, 2020) (asthma diagnosis insufficient to grant temporary release); United States v. Crosby, 2020 U.S. Dist. LEXIS 58189 (D. Md. Apr. 2, 2020) (previous diagnosis of pneumonia, asthma, and a need for an albuterol

inhaler insufficient to allow temporary release); <u>United States v. Jones</u>, 2:19-CR-00249-DWA, 2020 WL 1511221, *3 (W.D. Pa. Mar. 29, 2020) (hypertension, sleep apnea, and asthma were not sufficient to grant temporary release); <u>United States v. Gileno</u>, 2020 U.S. Dist. LEXIS 47590 (D. Conn. Mar. 19, 2020) (high blood pressure, high cholesterol, asthma, and allergies insufficient to allow temporary release). These cases are particularly important to our analysis here, given that the defendant has not provided us with any documentation of this alleged medical condition.

Instead, we must then weigh those specific health concerns against the substantial public safety considerations which led the us to order the defendant's detention in the first instance and which led the district court to deny reconsideration of our detention order. In this case, the following factors, unique to the defendant, compelled the decision to detain the defendant as a risk of flight and danger to the community: the nature of his instant charges, his prior arrests and convictions, his history of violent behavior and substances abuse, and the fact that the alleged offenses were committed while he was awaiting trial on his pending state charges. In addition, the district court noted that, although the defendant's wife claimed to have no knowledge of the defendant's drug trafficking activity, there were two handguns, drug packaging materials, a money counter, and a scale in the home they shared with their two six-year-old children. (Doc. 131). Indeed, the defendant's wife

testified that she legally purchased the two handguns found in their home. (Id.) Thus, the defendant is unable to prove by clear and convincing evidence that he does not pose a danger to society or a flight risk in this case.

Lastly, we note that we are not required to conduct an evidentiary hearing to determine whether presentence release is appropriate. See United States v. Oaks, 793 F. App'x 744, 747 (10th Cir. 2019); United States v. Hensler, 18 F.3d 936 (5th Cir. 1994); United States v. King, 849 F.2d 485, 490 (11th Cir. 1988); see also Jones, 2020 U.S. Dist. LEXIS 59755, 2020 WL 1674145, at *2-5. Given our finding that the defendant cannot meet the exacting standards required for his release pending sentencing, in this case, in the exercise of our discretion we are declining to schedule such a hearing. On this score, we find that the facts and circumstances which caused the court to initially detain the defendant have not materially changed. However, the legal benchmarks which Love must meet to secure release have changed in ways which dramatically heighten the showing he must make to justify release prior to sentencing, Given this changed legal landscape, quite simply, the defendant has not and cannot demonstrate either that he does not pose a danger to the community or that the onset of the COVID-19 pandemic presents such an exceptional reason to justify his temporary release. Indeed, the burden this defendant faces as a presentence detainee to garner his temporary release is higher than the typical burden for those defendants being held pending their trials. Here, the only basis propounded

to justify the defendant's release is the onset of the novel coronavirus and the fear of harm that could come from infection. Since it is well-established that pretrial detainees who merely argue generalized concerns regarding the novel coronavirus coupled with a diagnosis of asthma, are not entitled to temporary release, United States v. Tucker, 2020 U.S. Dist. LEXIS 59516 (D. Md. Apr. 3, 2020) (severe asthma, high blood pressure and high cholesterol insufficient to justify temporary release), we can hardly determine that the defendant in this case, seeking presentence release with an even higher statutory burden, should be entitled to release. Given these circumstances, we do not find it necessary to subject the defendant, counsel, and an additional third-party custodian to a hearing in this case where the defendant was otherwise unable to meet the difficult burden that he faced in this case.

## IV.   Conclusion

Weighing and balancing these countervailing considerations we conclude that the defendant's motion for temporary release pursuant to 18 U.S.C. § 3142(i) will be DENIED. "Because the Court is mindful that both the conditions in . . . jail and the COVID-19 pandemic itself are both rapidly evolving, it will entertain a renewed request for release if—at some point in the future—it becomes clear" that there are exceptional reasons that justify the defendant's release. United States of America v. Lee, No. 19-CR-298 (KBJ), 2020 WL 1541049, at *7 (D.D.C. Mar. 30, 2020).

Therefore, this order is entered without prejudice to renewal of this motion at some future date should the defendant's circumstances materially change.

An appropriate order follows.

So ordered this 27th day of April 2020.


*/s/ Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIM. NO. 1:17-CR-342** |
| | : | |
| **v.** | : | **(Judge Rambo)** |
| | : | |
| | : | **(Magistrate Judge Carlson)** |
| **ARTHUR LOVE** | : | |

### ORDER

In accordance with the accompanying Memorandum Opinion, the defendant's motion for temporary release pursuant to 18 U.S.C. § 3142(i) is DENIED. "Because the Court is mindful that both the conditions in . . . jail and the COVID-19 pandemic itself are both rapidly evolving, it will entertain a renewed request for release if—at some point in the future—it becomes clear" that there are exceptional reasons that justify the defendant's release. United States of America v. Lee, No. 19-CR-298 (KBJ), 2020 WL 1541049, at *7 (D.D.C. Mar. 30, 2020). Therefore, this order is entered without prejudice to renewal of this motion at some future date should the defendant's circumstances materially change.

So ordered this 27th day of April 2020.

*/s/ Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge